# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TENNESSEE
# WESTERN DIVISION

| | |
|---|---|
| VANDA WATKINS p/k/a Criminal Manne, an individual; HAYWARD IVY p/k/a DJ SQUEEKY, an individual; and RAYNA B. RUFUS, in her capacity as Executor of the ESTATE OF GERALD BERRY p/k/a KILO G. | )<br>)<br>)<br>)<br>)<br>)<br>) |
| Plaintiffs, | )<br>) Case No. 2:24-cv-02880<br>) |
| v. | ) **COMPLAINT FOR COPYRIGHT**<br>) **INFRINGEMENT**<br>) |
| KANYE OMARI WEST p/k/a YE, an individual; TYRONE WILLIAM GRIFFIN p/k/a TY DOLLA $IGN, an individual; YEEZY RECORD LABEL LLC, a California limited liability company; WARNER/CHAPPELL MUSIC, INC., a Delaware Corporation; CREATE MUSIC GROUP, INC., a Delaware Corporation; and DOES 1-10. | ) **JURY DEMANDED**<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |
| Defendants. | )<br>) |

Plaintiffs, by and through their undersigned counsel, and pursuant to the Federal Rules of Civil Procedure, hereby allege the following in their Complaint against Defendants:

## NATURE OF ACTION

1. This is an action for copyright infringement seeking damages and injunctive relief pursuant to the United States Copyright Act of 1976, as amended, 17 U.S.C. §§106 and 501 et. seq., and involves substantial claims and questions that arise under federal law.

## INTRODUCTION

2. This matter involves the deliberate theft of Plaintiffs' music by a world-renowned musician.

3. Approximately February 9, 2024, Defendants commercially released a new musical album entitled *VULTURES 1* containing a song titled "Fuk Sumn" riddled with numerous unlicensed samples of Plaintiffs' copyrighted music amounting to blatant copyright infringement.

4. In fact, these acts of copyright infringement are so brazen, yet easily discernible that Plaintiffs' actual vocals and music can be identified in the beginning of Defendants' "Fuk Sumn."

5. Plaintiffs have never given permission to Defendants for such use of their music.

6. Plaintiffs have never been compensated nor credited in any form by Defendants for such use of their copyrighted music. Defendants continue to profit from their clear acts of copyright infringement in the form of music royalties from well over 150,000,000 streams generated by digital music service providers to date.

7. After numerous unsuccessful attempts at resolving this matter directly with the responsible parties, Plaintiffs have been left with no other method of recourse than to bring this cause of action for damages and injunctive relief.

## JURISDICTION AND VENUE

8. This Court has exclusive subject matter jurisdiction pursuant to 28 U.S.C. § § 1331 and 1338 (a), because the nature of these matters arises under federal law.

9. As more fully set forth below, this Court has personal jurisdiction over each of the Defendants, because Defendants have committed acts of copyright infringement that have substantially harmed Plaintiffs in this District, including, inter alia, purposefully directing advertising, sales, distributions, performances, or digital transmissions of their recordings, including the infringed upon work, to citizens and consumers of the State of Tennessee.

10. Venue is proper in this Judicial District pursuant to 28 U.S.C. §§ 1391 and 1400 (a) as all Plaintiffs reside in the District where this suit is being filed and a substantial part of the events or omissions giving rise to the claim, including the intellectual property that is the center of this dispute, is situated and was created in this District.

## THE PARTIES

11. Plaintiff Vanda Watkins, professionally known as "Criminal Manne" (hereinafter "Criminal Manne"), is a resident of the state of Tennessee and lives within this Judicial District.

12. Plaintiff Criminal Manne is a musical artist who has been creating and writing music for more than 20 years and co-owns the copyrights in the sound recording and musical composition entitled "Drink a Yak (Part 2)" as embodied upon the sound recording, both as registered with the United States Copyright Office. Such copyright registrations are attached to this Complaint and identified as Exhibit A.

13. Plaintiff Hayward Ivy, professionally known as "DJ Squeeky" (hereinafter "DJ Squeeky"), is a resident of the state of Tennessee and lives within this Judicial District.

14. Plaintiff DJ Squeeky is a musical artist who has been creating, writing, and producing music for more than 20 years and co-owns the copyrights in the sound recording and musical composition entitled "Drink a Yak (Part 2)" as embodied upon the sound recording.

15. Plaintiff Rayna B. Rufus is an individual and the Executor of the Estate of Gerald Berry p/k/a KILO G who also co-owns the copyrights in the sound recording and musical composition entitled "Drink a Yak (Part 2)" as embodied upon the sound recording.

16. Defendant Kanye Omari West, professionally known as YE (hereinafter "YE"), is a highly acclaimed American rap performer who is a co-writer and producer of the alleged

infringing musical work entitled "Fuk Sumn," and based on information and belief, is a resident of the State of California residing in Los Angeles County.

17. Defendant Tyrone William Griffin Jr., professionally known as Ty Dolla $ign (hereinafter "Ty Dolla $ign"), is also a co-writer of the alleged infringing musical work entitled "Fuk Sumn," and based on information and belief, is a resident of the State of California residing in Los Angeles County.

18. Defendants YE and Ty Dolla $ign are renowned musicians who perform in the genre of rap music and who have achieved monumental success within the music industry and beyond. Their music is known worldwide.

19. Defendant Yeezy Record Label, LLC, is a California limited liability company with its principal place of business in Los Angeles County.

20. Based on information and belief, Defendant Yeezy Record Label, LLC is one of the music publishers, administrators, and co-owners of the infringing work, "Fuk Sumn."

21. Defendant Warner/Chappell Music, Inc. is a Delaware corporation with offices in several locations throughout the United States, including within the State of Tennessee, in the city of Nashville, and is registered to do business within this State and District.

22. Based on information and belief, Defendant Warner/Chappell Music, Inc. is one of the music publishers, administrators, and co-owners of the infringing work, "Fuk Sumn," the infringing musical composition.

23. Defendant Create Music Group, Inc. is a Delaware Corporation with its principal place of business in Los Angeles, California. Create Music Group, Inc. is a music distribution company that, based on information and belief, publicly distributes the infringing work, "Fuk Sumn," the infringing sound recording.

4

24. Plaintiffs are ignorant of the true names, capacities, and titles of some Defendants sued herein and identified as Does 1-10. Plaintiffs will seek leave to amend this Complaint to include the identities of Does 1-10 if and when they are ascertained.

25. Based on information and belief, Does 1-10 are additional parties responsible for the wrongful conduct being complained of herein and co-own the infringing work "Fuk Sumn."

## JOINDER OF PLAINTIFFS

26. Collectively, Plaintiffs are the complete copyright owners of the sound recording, and majority owners of the composition entitled "Drink a Yak (Part 2)," the subject of this lawsuit.

27. Joinder of all Plaintiffs, pursuant to. Fed. R. Civ. P. 20(a) and (b) is warranted in this situation as all Plaintiffs' claims arise from the same, singular cause of action and are based upon the same facts and allegations against Defendants. Joinder of all Plaintiffs therefore promotes the administration of justice.

## FACTUAL BACKGROUND

28. Plaintiffs are well-known hip-hop musicians from Memphis, Tennessee who create and record original musical compositions consisting of melodical, rhythmic style beats and sounds, combined with intertwined vocal lyrics.

29. Collectively, Plaintiffs create music together in a joint ownership capacity.

30. Each Plaintiff would make individual contributions toward the creation of the complete musical composition, and would, in turn, collectively own this musical work together including ownership rights in both the resulting sound recording and underlying musical composition embodied upon such sound recording. Royalty proceeds would be shared and split accordingly.

31. "Drink a Yak (Part 2)," created and owned jointly by Plaintiffs, is the subject of this lawsuit.

32. Much of Plaintiffs' jointly created music, including specifically "Drink a Yak (Part 2)," is currently accessible via numerous avenues and digital service providers such as YouTube, Spotify, Apple Music and other music streaming services. "Drink a Yak (Part 2)" has been widely accessible to the public for many years, most notably, prior to the release of Defendants' infringing "Fuk Sumn."

33. Based on information and belief, Defendants directly accessed Plaintiffs' "Drink a Yak (Part 2)," through online digital music service providers.

34. Based on information and belief, it is through this direct access that Defendants were able to download and/or extract Plaintiffs' "Drink a Yak (Part 2)," and then incorporate and interpolate components of it into the infringing "Fuk Sumn," all without obtaining permission or consent from Plaintiffs for such use of their copyrighted works.

35. Based on information and belief, Defendants released the infringing sound recording and infringing composition embodied thereon entitled "Fuk Sumn" on or around February 9, 2024, via all digital streaming services commercially available.

36. After the commercial release of the infringing "Fuk Sumn," Plaintiffs were able to easily identify their uniquely individual musical contributions found collectively within "Drink a Yak (Part 2)."

37. Based on information and belief Defendants' "Fuk Sumn" contains numerous vocal and compositional elements from Plaintiffs' "Drink a Yak (Part 2)."

38. Specifically, Plaintiff Criminal Manne's vocals from "Drink a Yak (Part 2)" state "Smokin on a junt, with my ni**as drinkin' O.E." and can be easily identified by the average

listener in the very beginning of "Fuk Sumn," from the :00 to :03 time stamps. These vocals are replayed again at the :07 to :10 time stamps.

39. Plaintiff KILO G's (Estate of) vocals from "Drink a Yak (Part 2)" can also be easily identified in "Fuk Sumn." Specifically, "Stop off at the liquor store, get your yak, then we headed for the indo" at the :04 to :06 time stamps and then again from the :11 to :14 time stamps.

40. Accordingly, on or around February 28, 2024, after the commercial release of "Fuk Sumn," Alien Music, a third-party music licensing and clearance intermediary company, contacted Plaintiffs' counsel, on behalf of Defendants, to confirm ownership of the underlying "Drink a Yak (Part 2)" sound recording and musical composition embodied thereon, for sample clearance use within the infringing "Fuk Sumn."

41. Sample clearance involves securing legal consent from the owner or owners of copyrighted musical works in exchange for compensation.

42. On or around the beginning of March 2024, and shortly after Plaintiffs' counsel were first contacted by Alien Music for sample clearance use of "Drink a Yak (Part 2)," within the infringing "Fuk Sumn," negotiations began.

43. Specifically, Plaintiffs collectively negotiated based on their combined 100% ownership in the underlying sound recording, "Drink a Yak (Part 2)", and 66.67% combined ownership in the composition to "Drink a Yak (Part 2)" embodied thereon, for complete non-exclusive music licenses for uses of the sound recording and composition embodied thereon.

44. Negotiations for the remaining 33.33% of the composition of "Drink a Yak (Part 2)" were instituted separately between Alien Music and Ultra International Music Publishing, co-owner of 33.33% of the musical composition embodied on "Drink a Yak (Part 2)."

45. On or around June 6, 2024, after several months of negotiations, Plaintiffs' counsel was notified through Alien Music, that Defendant YE had fired his entire legal and business team leaving him without any legal representation. Thus, negotiations ceased at that time.

46. Despite a much anticipated resolution resulting from several months of intense negotiations, Plaintiffs were informed they would need to wait to be contacted by Defendant YE's new legal representation.

47. On or around June 18, 2024, Plaintiffs were contacted by Defendant YE's new legal representation, Attorney Eric Galen, who set up a meeting with Plaintiffs' counsel to discuss the referenced music license clearances and continue negotiations where they last left off. It was Plaintiffs' reasonable belief that negotiations would soon begin again after this communication.

48. However, prior to this meeting, on June 20, 2024, Plaintiffs' counsel was again notified by Alien Music that Attorney Eric Galen was no longer Defendant YE's legal representative, rendering Defendant YE without any legal representation once again.

49. To date, Plaintiffs have made numerous attempts to resolve this matter short of litigation but due to Defendants purposeful neglect in resolving this matter, and clear, intentional infringement of Plaintiffs' original, copyrighted musical works, Plaintiffs continue to suffer ongoing harm.

50. Meanwhile all Defendants have continued to profit from the illegal usage of the sampled sound recording and musical composition of "Drink a Yak (Part 2)" with over 150,000,000 Spotify streams to date generated from the infringing "Fuk Sumn." This is in addition to the likely millions of streams generated from other digital music providers including but not

limited to iTunes, YouTube, Apple Music, Pandora, iHeartRadio, Amazon Music, and SoundCloud.

## COUNT I
## COPYRIGHT INFRINGEMENT

51. Plaintiffs incorporate by reference all the allegations in paragraphs 1 through 50 as if fully set forth herein.

52. Collectively, Plaintiffs are the creators and legal beneficial owners of the unauthorized sampled sound recording and underlying musical composition embodied thereon entitled "Drink a Yak (Part 2)."

53. The sound recording and musical composition embodied thereon entitled "Drink a Yak (Part 2)" is the subject of a valid Certificate of Copyright Registration issued by the United States Register of Copyrights, Registration No. SR1003506. A copy of the Certificate is attached hereto as Exhibit A.

54. Defendants had easy access to "Drink a Yak" (Part 2) because it was commercially released many years prior to the infringing "Fuk Sumn" and has been accessible within the public domain ever since its initial release.

55. Based on information and belief, on or around February 9, 2024, Defendants commercially released "Fuk Sumn" through other Defendant distributors named in this Complaint. The release of "Fuk Sumn" contained many identical compositional and vocal elements of "Drink a Yak (Part 2)" which were easily identified by Plaintiffs and other music listeners.

56. In fact, Plaintiffs actual voices are distinguishable within the infringing "Fuk Sumn" as described in paragraphs 38 and 39 of this Complaint.

57. Defendants intentional sampling and use of Plaintiffs' sound recording and musical composition of "Drink a Yak (Part 2)" have deprived Plaintiffs from earned compensation of their copyrighted works and caused them significant harm in the form of lost sales, business, and notoriety. Defendants continue to profit from these clear acts of infringement.

58. At no time did Plaintiffs consent or give permission to Defendants for use of their copyrighted works.

59. At no time did Defendants compensate nor pay Plaintiffs any form of valuable consideration for these music sample clearance licenses.

60. At all relevant times all Defendants were in complete control of the creation, production, and commercial release of the infringing "Fuk Sumn."

61. At all relevant times Defendants were acting within the scope of their employment, as agents of one another specifically regarding the production and commercial release of the infringing musical work "Fuk Sumn."

62. The acts of copyright infringement being complained of were intentional, willful, and only designed to produce profits without consideration of securing consent from the Plaintiffs.

63. Based on information and belief, Defendants have obtained monetary gain they would not have otherwise realized but for their willful infringement of Plaintiffs' copyrights. As such, and pursuant to 17 U.S.C. § 504 (b), Plaintiffs are entitled to their actual damages and Defendants' profits attributable to the infringements described herein and, in an amount, to be ascertained at trial because it is not currently known.

64. In the alternative, Plaintiffs are entitled to statutory damages in an amount up to $150,000 per willful infringement pursuant to 17 U.S.C. § 504 (c).

65. Plaintiffs also hereby request attorneys' fees and costs pursuant to 17 U.S.C. § 505.

## COUNT II
## VICARIOUS COPYRIGHT INFRINGEMENT

66. Plaintiffs incorporate by reference all the allegations in paragraphs 1 through 65 as if fully set forth herein.

67. Based on information and belief, each of the Defendants at all times herein were acting as the agent and/or employee or some or all other Defendants and in doing those things herein alleged, were clearly acting within the scope of such agency and employment relationship.

68. Based on information and belief, all Defendants share ownership and control in the infringing "Fuk Sumn" and the ownership interests between all Defendants are so intertwined and convoluted that all Defendants must be held jointly and severally liable to Plaintiffs for the acts being complained of.

69. Based on information and belief, Defendants are vicariously liable for the copyright infringement alleged herein because at all relevant times they had the right and ability to supervise and/or control the infringing conduct and have a direct financial interest in the infringing work "Fuk Sumn."

70. Based on information and belief, Defendants directly collect and/or receive proceeds based on their respective ownership percentages in the infringing content.

71. Based on information and belief, Defendants knew, or should have known, that they, their agents, authorized representatives, customers, and other music users were not authorized to reproduce, publicly perform, distribute, create derivative works, profit from or use the infringing track in any way whatsoever without proper permission, consent, and specifically music license clearances authorizing such uses.

72. Based on information and belief, a derivative work was created illegally because Plaintiffs' protected works were reproduced without proper consent and commercial distribution of the infringing work occurred. Despite knowledge and notice of copyright infringement, Defendants have always had, and continue to have, the right to supervise and/or control the infringing acts being complained of and specifically the way in which distribution of the infringing material occurs to customers and end users.

73. Based on information and belief, and for the reasons stated above, Defendants have committed vicarious copyright infringement and Plaintiffs have suffered and continue to suffer ongoing harm proximately caused by Defendants' infringements.

74. Based on information and belief, Defendants have obtained monetary gain they would not have otherwise realized but for their willful infringement of Plaintiffs' copyrights. As such, and pursuant to 17 U.S.C. § 504 (b), Plaintiffs are entitled to their actual damages and Defendants' profits attributable to the infringements described herein and, in an amount, to be ascertained at trial because it is not currently known.

75. In the alternative, Plaintiffs are entitled to statutory damages in an amount up to $150,000 per willful infringement pursuant to 17 U.S.C. § 504 (c).

76. Plaintiffs also hereby request attorneys' fees and costs pursuant to 17 U.S.C. § 505.

## COUNT III
## CONTRIBUTORY COPYRIGHT INFRINGEMENT

77. Plaintiffs incorporate by reference all the allegations in paragraphs 1 through 76 as if fully set forth herein.

78. Based on information and belief, each of the Defendants at all times herein were acting as the agent and/or employee or some or all other Defendants and in doing those things herein alleged, were clearly acting within the scope of such agency and employment relationship.

79. Based on information and belief, the ownership interests and employment relationships of all Defendants are so intertwined and convoluted that all Defendants clearly knew, must have reasonably known, or had reason to know, of the infringement given that the infringement is so obvious.

80. Based on information and belief, and for the reasons stated above, Defendants have committed contributory copyright infringement and Plaintiffs have suffered and continue to suffer ongoing harm proximately caused by Defendants' infringement.

81. Based on information and belief, Defendants have obtained monetary gain they would not have otherwise realized but for their willful infringement of Plaintiffs' copyrights. As such, and pursuant to 17 U.S.C. § 504 (b), Plaintiffs are entitled to their actual damages and Defendants' profits attributable to the infringements described herein and, in an amount, to be ascertained at trial because it is not currently known.

82. In the alternative, Plaintiffs are entitled to statutory damages in an amount up to $150,000 per willful infringement pursuant to 17 U.S.C. § 504 (c).

83. Plaintiffs also hereby request attorneys' fees and costs pursuant to 17 U.S.C. § 505.

**REQUEST FOR IMMEDIATE INJUNCTION AND DECLARATORY JUDGMENT**

84. Plaintiffs incorporate by reference all the allegations in paragraphs 1 through 83 as if fully set forth herein.

85. Pursuant to 17 U.S.C. § 502, Plaintiffs seek declaratory and injunctive relief.

86. Plaintiffs hereby request a declaratory judgment that Defendants do not have the right to exploit and continue to exploit the infringing musical work "Fuk Sumn" without Plaintiffs' consent and written approval, and that any further unauthorized exploitation of the infringing musical work "Fuk Sumn" constitutes willful copyright infringement.

87. Plaintiffs seek a permanent injunction enjoining further reproduction, sales, performances, and other similar for-profit uses of the infringing work "Fuk Sumn" including the creation of derivative works.

88. Defendants are causing ongoing harm, and unless enjoined by this Court, will continue to cause Plaintiffs irreparable injury for which they have no other adequate remedy at law. For this reason, an injunction is necessary pursuant to 17 U.S.C. § 502 specifically prohibiting the continued infringement of Plaintiffs' copyrighted musical works entitled "Drink a Yak (Part 2)."

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs respectfully request this Court enter judgment in their favor and against all Defendants as follows:

(a) An award for actual damages pursuant to 17 U.S.C. § 504 (b);

(b) In the alternative, Plaintiffs are entitled to statutory damages in an amount up to $150,000 per willful infringement pursuant to 17 U.S.C. § 504 (c);

(c) An order that each Defendant provide to Plaintiffs a complete and accurate accounting of any and all profits earned in connection with their exploitation of the infringing musical work "Fuk Sumn;"

(d) An order preliminarily and permanently enjoining each Defendant, its/her/his agents, servants, employees, and all parties in connection with them, from directly and indirectly using the infringed musical work "Fuk Sumn", or any other work derived in any way therefrom, in any manner which infringes on the copyrights to "Drink a Yak (Part 2)," including, without limitation a prohibition against the reproduction, sale, distribution,

dissemination, public performance, or other use or exploitation, of the infringing work and all other derivative works;

(e) A finding that Defendants' infringements were willful, in accordance with 17 U.S.C. Section 504 (c) (2);

(f) An award of costs, including reasonable attorneys' fees, pursuant to 17 U.S.C. § 505;

(g) The entry of a final judgment order that includes pre- and post-judgment interest;

(h) An award of any such other and further relief as the Court deems just, proper, and equitable.

## **DEMAND FOR TRIAL BY JURY**

Pursuant Fed. R. Civ. P. 38(b), Plaintiffs hereby demand a trial by jury on all issues so triable.

Dated: November 13, 2024.                THE LAW OFFICE OF BRADLEY J. EISEMAN

By:    /s/ Bradley J. Eiseman
Bradley J. Eiseman
TN Bar No. 30534
115 Harbor Common Dr
Memphis, TN 38103
Telephone: (901) 299-8250
Facsimile:  (901) 370-3890
Email: bradeisemanlaw@gmail.com

*Attorney for Plaintiffs*