UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF TENNESSEE

| | |
|---|---|
| VANDA WATKINS p/k/a Criminal Manne, an individual; HAYWARD IVY p/k/a DJ SQUEEKY, an individual; and RAYNA B. RUFUS, in her capacity as Executor of the ESTATE OF GERALD BERRY p/k/a KILO G., <br><br>　　　　　　Plaintiffs,<br><br>　　　v.<br><br>KANYE OMARI WEST p/k/a YE, an individual; TYRONE WILLIAM GRIFFIN p/k/a TY DOLLA $IGN, an individual; YEEZY RECORD LABEL LLC, a California limited liability company; WARNER/CHAPPELL MUSIC, INC., a Delaware corporation; CREATE MUSIC GROUP, INC., a Delaware corporation; and DOES 1-10,<br><br>　　　　　　Defendants. | Case No. 2:24-CV-02880<br><br>Hon. Jon Phipps McCalla<br><br>Action filed: November 13, 2024<br><br>FAC filed: April 7, 2025 |

**DEFENDANT CREATE MUSIC GROUP, INC.'S REPLY IN SUPPORT OF ITS**

**MOTION TO DISMISS**

Defendant Create Music Group, Inc. ("Create" or "Defendant") hereby respectfully submits this reply memorandum in support of its second motion to dismiss (the "Motion") the First Amended Complaint of Plaintiffs Vanda Watkins, Hayward Ivy, and Rayna B. Rufus (the "FAC") (collectively "Plaintiffs").

I.   INTRODUCTION

Plaintiffs appear to rely on the alleged actions of co-defendants and third parties to confer Tennessee's jurisdiction over Create. Even in its Opposition, Plaintiffs do not point to a single concrete factual allegation specific to Create which would support this Court's jurisdiction. Instead, Plaintiffs rely on marketing efforts which Create was not involved in, and third-party negotiations with Plaintiffs' agents, which actually illustrate Create's lack of involvement. Moreover, Create has introduced unrefuted evidence that it is not subject to jurisdiction in Tennessee and Plaintiffs have introduced zero rebutting evidence. In fact, the only point Plaintiffs' Opposition has served to emphasize is that Create simply enabled the technical distribution and collection of revenues in connection with the allegedly infringing musical work "Fuk Sumn" (the "Song"). This alone is not sufficient to establish jurisdiction, as it would effectively subject everyone to jurisdiction worldwide if they had any role in supporting the technical distribution of a service or product. Simply put, Create has no contact with Tennessee and has introduced evidence proving as much – Plaintiffs have not introduced anything that could possibly rebut this.

II.  ARGUMENT

   A.   **This Court does not have Specific Personal Jurisdiction over Create Music Group**

Plaintiffs' Opposition does not argue that this Court has general personal jurisdiction over Create, and therefore admits there is no general personal jurisdiction. *See generally*, Dkt No. 97, Opposition. Plaintiffs' arguments are solely based upon specific jurisdiction.

1

Once a defendant has introduced evidence that there is no jurisdiction, "[a] plaintiff may not rest on [its] pleadings, but must, by affidavit or otherwise, set forth specific evidence supporting jurisdiction." *Branstetter v. Holland Am. Line N.V.*, 430 F. Supp. 3d 364, 370 (W.D. Tenn. 2019). Plaintiffs' jurisdictional support hinges on two allegations: the listening party hosted in Nashville, and Alien Music's sample clearance negotiations with Plaintiffs. FAC at ¶¶ 30-32. As Create will show, Plaintiffs have not set forth any evidence to make even a prima facie showing that these allegations support this Court's assertion of specific personal jurisdiction over Create.

Plaintiffs cite *Scott v. White* in support of the proposition that performing in the state of Tennessee and negotiating with residents of Tennessee demonstrates purposeful availment. Opposition at pp. 6-7. Yet, as an important distinction, Create did not do either of those things. None of the grounds for which the Court found an appropriate basis to assert jurisdiction in *Scott v. White* are applicable here. *See Scott v. White*, 539 F. Supp. 3d 831, 841 (M.D. Tenn. 2021) ("Defendant has travelled to Memphis, Tennessee for performances and music-related business using the name "LADY A" on at least five or six occasions over the last several years; and her music is available for download in Tennessee and elsewhere. Defendant's enforcement activities relate to her engaging a Tennessee-based attorney to represent her with regard to trademark issue . . . ."). Plaintiffs argue "the case at bar is very similar to *Scott v White*. Defendant YEEZY and Ty Dolla $ign are musicians who clearly intended to travel to the state of Tennessee in order to promote their music to its consumers. Defendants and/or their authorized agents who identified themselves as such like Alien Music, also freely communicated and eventually negotiated with Plaintiffs . . . . " *Id*. Not only are there no specific acts alleged as to Create, Create has already refuted these allegations through the Supplemental Declaration of Jonathan Strauss, submitted concurrently with Create's second Motion to Dismiss in this matter. Dkt No. 61-2, Supplemental

2

Declaration of Jonathan Strauss ("Supp. Strauss Decl."). Create has shown that it was not involved with the organization, planning, marketing, promotion, or any other aspect of the Nashville listening party. Supp. Strauss Decl. at ¶ 7. Further, Create did not engage in any negotiations with Plaintiffs with regard to the Song, through Alien Music or any other third parties. *Id*. at ¶ 9. The only function Create performed with respect to the Song was its technical delivery to digital platforms and collection of the resultant revenues. *Id*. at ¶ 5.

Plaintiffs have not submitted any evidence to the Court showing that Create was involved with either the alleged promotional activities in Tennessee, or the negotiations regarding the sample. *See generally*, Opposition. In fact, the only evidentiary exhibit where Create actually appears is Exhibit E – an email chain regarding Plaintiffs' takedown notice submitted to Soundcloud pursuant to the Digital Millennium Copyright Act ("DMCA"). *See* Dkt No. 97-5, Opposition at Ex. E. This underscores Create's involvement as a distributor, as Create's role was delivering the song to digital platforms such as Soundcloud. *Id*. None of Plaintiffs' exhibits show that Create was involved with any sample clearance negotiations for the Song – this remains a conclusory, unsupported allegation. This DMCA notice is also entirely irrelevant to jurisdiction as such notice was sent to Soundcloud, and there is no allegation that Soundcloud is somehow based in Tennessee, or that this notice was sent to offices in Tennessee.

Plaintiffs hold out *MAG IAS Holdings, Inc. v. Schmuckle*, as similar to the case at hand. In fact, the *Schmuckle* defendant engaged in strikingly distinct contacts with the forum state than those alleged here:

> Although he was with the MAG Group for fewer than eight months, Schmückle had established a close working relationship with MAG entities and employees in Michigan. During his two trips to Michigan, he was directly involved in planning for future operations in the state and met with executives from MAG Automotive's largest client, the Ford Motor Company. This interaction with Ford establishes that Schmückle's contacts with Michigan extended beyond the fact that

3

> the MAG Group had located its operations there. In addition to his trips, he was in regular contact with Michigan-based executives by phone and email.
> It was also reasonable for Schmückle to have foreseen that his work with MAG Automotive would subject him to the jurisdiction of Michigan courts. Schmückle is alleged to have held himself out both to MAG employees and to clients as being responsible for MAG's Michigan operations.

*MAG IAS Holdings, Inc. v. Schmuckle*, 854 F.3d 894, 901-902 (6th Cir. 2017). The *Schmuckle* defendant not only traveled to Michigan, but he represented himself as being responsible for business operations in that state. *Id*. at 903. Even if the Court were to construe Plaintiffs' allegations as completely factual, and it should not as Plaintiffs have submitted no supporting evidence, the difference between the quality of contacts of those alleged in *Schmuckle* and here is stark.

It bears repeating, neither Create nor any of its authorized agents, representatives, or third parties, engaged in any negotiations with Plaintiffs or Plaintiffs' agents with regard to the sample clearance for the Song. Supp. Strauss Decl. at ¶ 9. And Plaintiffs do not submit any evidence to refute this – Plaintiffs' allegations that "Defendant Create's agents intentionally reached out to Plaintiffs' counsel on multiple occasions knowing Plaintiffs and their counsel were so situated in the state of Tennessee . . ." are completely unsupported. Opposition at p. 8. The exhibits to Plaintiffs' Opposition merely show that Plaintiffs' counsel reached out to Create regarding its DMCA Takedown Request. *See* Opposition at Ex. E. Plaintiffs' counsel's email even appears to indicate that Create was not involved in any such prior negotiations. *See id*. ("Please note this was not the action we wanted to take regarding this matter. **We were very close to settling this matter previously but were left in limbo after Kanye West fired his legal team numerous times in the middle of negotiations for sample clearance regarding the track at issue here.**"). By all accounts, it appears that Plaintiffs reached out to Create as a last resort, due to prior settlement negotiations with the West team falling through. None of the exhibits indicate that Alien Music or

4

any other third party was acting at the behest of Create – as they were not. Supp. Strauss Decl. at ¶ 9. Plaintiffs do not submit any evidence to the contrary, nor do Plaintiffs explain how these exhibits evidence Create's alleged involvement in the sample clearance negotiations. *See generally*, Opposition.

Plaintiffs' FAC and subsequent Opposition to this Motion fail to establish that Create purposefully availed itself of the privilege of acting in Tennessee. Plaintiffs attempt to use the unilateral alleged actions of co-defendants and third parties to confer jurisdiction over Create. However, the "purposeful availment requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts, or of the unilateral activity of another party or a third person." *Hall v. J. W. Cappelens Forlag A/S*, 2006 WL 8443011, at *5 (E.D. Tenn. Sept. 6, 2006). Because Plaintiffs have failed to satisfy the purposeful availment prong, there can be no inference of reasonableness. *See Sampson-El v. Georgia*, 2013 WL 12250015, at *5 (E.D. Tenn. May 3, 2013).

Confoundingly, Plaintiffs' Opposition claims, "other named Defendants under the direction, control, and financial backing of Defendant Create had numerous listening parties planned for the sole purpose of promoting the infringing material that is the subject of this lawsuit, specifically within the state of Tennessee." Opposition at p. 9. Yet Plaintiffs likewise provide no evidentiary support for this assertion, and fail to refute the sworn declaration of Create's CEO which clarifies that "Create was not involved with the organization, planning, marketing, or promotion of any listening parties related to the Song." Supp. Strauss Decl. at ¶ 8. Create's contacts with Tennessee are virtually nonexistent – there is no contractual relationship between Create or any of the Plaintiffs, nor has Create provided any services to Plaintiffs. Supp. Strauss Decl. at ¶¶ 5-9. In fact, Create's services performed for the Song were commissioned by its co-defendants

5

who are California residents. FAC at ¶¶ 21-24; *Comerica Bank v. FGMK, LLC*, 2010 WL 457115, at *6 (E.D. Mich. Feb. 3, 2010) ("As discussed above, FGMK had almost no contact and conducted no activities within Michigan: it negotiated for, performed and delivered all of its accounting services in Illinois for its Illinois client. Thus, the cause of action did not arise from FGMK's activities within this state."). Nor does the FAC actually allege that Create directed, controlled, or financially-backed the listening party. *See* FAC at ¶ 30 ("Based on information and belief, Defendant Create worked in conjunction and coordination with Defendants YE and Yeezy regarding the release, promotion and marketing of the infringing work. This included organizing music listening parties promoting the infringing work.").

Plaintiffs ask this Court to set aside the firmly established standard for deciding a motion to dismiss based on lack of personal jurisdiction, and to simply consider the pleadings alone. *See* Opposition at p. 10 ("It is therefore a case of "he said, she said" and all arguments should clearly be viewed in a light most favorable to the Plaintiffs and **only based on the pleadings at this juncture**."). However, once a defendant submits evidence refuting jurisdiction, "the plaintiff may not meet its burden by simply standing on its pleadings; rather, the plaintiff must set forth, by affidavit or otherwise, specific facts showing that the Court has jurisdiction." *Hall v. J. W. Cappelens Forlag A/S*, 2006 WL 8443011, at *1 (E.D. Tenn. Sept. 6, 2006). Again, Plaintiffs have not made even a prima facie showing of jurisdiction.

Plaintiffs lament they "lack access to critical information regarding the specific roles each Defendant played in the release, marketing, and oversight of the infringing work within the state of Tennessee as no Defendant has disclosed their exact role aside from pointing the finger at each other." Opposition at p. 10. Yet, this action was initiated on November 13, 2024 – more than eight (8) months ago. Dkt No. 1. Since Create's entry into the case in December 2024, it has been clear

6

that Create was challenging jurisdiction. Create filed its first Motion to Dismiss in this matter based on the same issue of lack of jurisdiction, among other grounds on February 12, 2025 – more than five (5) months ago. Dkt No. 34. Plaintiffs have had ample opportunity to conduct discovery but have failed to do so. Fed. R. Civ. Proc. 26(d). Plaintiffs' requests for jurisdictional discovery comes nearly six months after discovery opened. The parties conducted their Rule 26(f) conference on or around January 27, 2025. Dkt No. 107-1, Declaration of Brianna Logan at ¶ 3 ("Logan Decl."). Discovery has been open since January 27, 2025. Fed. R. Civ. Proc. 26(d)(1)

The Court should not allow Plaintiffs' lack of diligence to prolong the disposition of this Motion, especially considering the fact that Create submitted sworn affidavits, and Plaintiffs have provided no such evidence whatsoever. Plaintiffs accuse Create of "concealing and failing to disclose the exact roles each Defendant plays . . ." with regard to the Song. Opposition at p. 10-11. Yet, it is Plaintiffs who failed to utilize the discovery tools at their disposal. Plaintiffs have had over six months to conduct discovery and request pertinent information, and have not done so. Not to mention Plaintiffs have been aware of the grounds for Create's initial Motion to Dismiss since February, and could have conducted discovery regarding the very same. Create has not concealed any information from Plaintiffs, Plaintiffs simply have not gone through the proper channels to obtain such information. Plaintiffs have not served a single interrogatory, request for admission, document request, or deposition notice – regarding jurisdiction or any other grounds. Logan Decl. at ¶¶ 6-7. Plaintiffs' failure to conduct discovery for the past six months should not be rewarded with additional time, which will be prejudicial and costly to Create. *See Schultz v. Szott*, 2009 WL 2392912, at *10 (N.D. Ohio July 31, 2009) (denying plaintiff's request for jurisdictional discovery on the basis that "**Plaintiff had ample time to investigate the issue of jurisdiction and to demonstrate a prima facie showing of personal jurisdiction**. Since the initial filing of

7

Defendant's motion to dismiss, Plaintiff has amended his complaint to include additional jurisdictional facts.").

## B. Each of Plaintiffs' Claims should be Dismissed for Failure to State a Claim

Plaintiffs do not actually contend with Create's 12(b)(6) arguments. Plaintiffs reiterate, "Defendants—including Create—engaged in these infringing acts with knowledge and intent, and that Create had control over distribution and profited from it." Opposition at p. 12. Plaintiffs claim that the FAC "describes efforts by Create and its agents to negotiate sample clearance with Plaintiffs after the infringing work was commercially released (FAC ¶¶ 49–58), reinforcing Create's knowledge of and involvement in the infringement." *Id*. This is a misrepresentation of what the FAC actually alleges. The FAC does not allege that Alien Music was acting on behalf of Create specifically. FAC at ¶¶ 49-58. The FAC actually alleges that "Alien Music, a third-party music licensing and clearance intermediary company, contacted Plaintiffs' counsel, **on behalf of Defendants**, to confirm ownership of the underlying 'Drink a Yak (Part 2)' sound recording . . . .". FAC at ¶ 49. Again, each of Plaintiffs' causes of action "lump[] together all Defendants without making any distinction between any of them and without making allegations specifying which Defendant allegedly did what." *Patel v. AR Grp. Tennessee, LLC*, 2022 WL 2678733, at *12 n. 16 (M.D. Tenn. July 11, 2022). Plaintiffs generally fail to differentiate between the actions of specific Defendants and instead attribute the actions of each Defendant to all.

Once more, Plaintiffs accuse Create of "fail[ing] to disclose its precise role in relation to the infringing work—whether that role involves supervision, planning, marketing, promotion, or other collaborative efforts with co-defendants." Opposition at p. 12. This is untrue on its face. Create's CEO has submitted two declarations detailing its exact role in relation to the Song. *See* Dkt No. 34-2, Declaration of Jonathan Strauss ("Strauss Decl."); Dkt No. 61-2, Supp. Strauss Decl.

8

And again, Create has not "failed" to disclose any information. Plaintiffs have had ample opportunity to conduct discovery regarding Create's distribution of the Song and have failed to do so. Plaintiffs are now weaponizing their lack of diligence to attack Create's credibility.

Plaintiffs appear to use this Opposition to litigate the damages portion of their claims – however, the relevance to the issues in this Motion remains unclear. Opposition at p. 12 ("Specifically, Defendant Create declined to remove or disable access to the infringing work or to halt its earnings, despite receiving a formal takedown notice from Plaintiffs' counsel prior to the initiation of this lawsuit."). Create has represented that in good faith they have "frozen the payment of any revenues in relation to the Song. Create does not plan on remitting any further payments in connection with the Song until the current case is resolved or settled amongst the Parties." Strauss Decl. at ¶ 23. This is also a red herring, as none of these allegations are stated in the FAC specifically as to Create, and are not pertinent to the Court's analysis of the Motion's 12(b)(6) arguments. For example, Plaintiffs argue, "Defendant Create willfully disregarded the takedown request—even after being presented with clear evidence that Plaintiffs' original work was being infringed." Opposition at pp. 12-13. Nowhere in the FAC do Plaintiffs make any allegations regarding a takedown request, nor Create's alleged disregard of such request. *See generally*, FAC. Plaintiffs cannot incorporate allegations via opposition. Because Plaintiffs fail to allege specific facts or actions as to Create, its causes of action should each be dismissed for failure to state a claim.

**C.    This Action should be Dismissed for Improper Venue**

Plaintiffs argue that a "substantial part of the events or omissions giving rise to the claim occurred in Tennessee, including the creation of the underlying work and harm suffered by Plaintiffs" and therefore venue is proper. Opposition at p. 13. Yet Create has sufficiently refuted

9

the jurisdiction of this Court on the basis that it did not purposely avail itself of, or conduct any activities in Tennessee. Plaintiffs have not provided any evidence to the contrary. Therefore, venue in this district is improper. 28 U.S.C. § 1400(a).[1]

### D.     Plaintiffs' Request for Transfer

It is unclear whether Plaintiffs are moving for transfer or arguing against it. Plaintiffs make a number of arguments that Create failed to demonstrate that a transfer is justified under the requisite factors. Opposition at p. 14 ("Defendant Create has failed to show that producing evidence in this forum would be unreasonably burdensome or costly . . . . Defendant Create has not met this burden, as it has not demonstrated that any alternative forum would be more convenient than this Court."). Create has not moved for transfer in this action. While it is Create's position that Plaintiffs have failed to establish jurisdiction and have failed to state claims against it and this action should be dismissed on that basis, should this Court find transfer to the Central District of California to be the more appropriate course of action, Create does not oppose such transfer.

### V.     CONCLUSION

Create respectfully requests that the Court dismiss the First Amended Complaint in its entirety on the basis of lack of jurisdiction and lack of venue.  If the Court finds it has jurisdiction and venue, Create respectfully requests the Court dismiss the First Amended Complaint in its entirety for failure to state a claim.

//

---

[1] Moreover, Plaintiffs have not even alleged any actions occurred in this venue – at most, they have alleged actions in the Middle District of Tennessee, where the "listening parties" occurred in Nashville. FAC at ¶ 30.

10

DATED:  July 21, 2025				Respectfully submitted,


						ELLIOT GIPSON PC



						 /s/ *Brianna Logan*
						BRIANNA LOGAN (California SBN: 347947)
						ELLIOT GIPSON (California SBN: 234020)
						Admitted *pro hac vice*

						ELLIOT GIPSON PC
						15260 Ventura Blvd., Suite 835
						Los Angeles, California 91403
						Telephone: (310) 817-1268
						Email: blogan@elliotgipson.com

						*Attorneys for Defendant Create Music Group, Inc.*