# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TENNESSEE
# WESTERN DIVISION

VANDA WATKINS, et al.,
    Plaintiff,

vs.

KANYE OMARI WEST p/k/a "YE," et al.,
    Defendants.

Case No.: 2:24-cv-2880-JPM-tmp

# DEFENDANT YE F/K/A KANYE OMARI WEST'S RULE 12(B) MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND TO QUASH SERVICE OF PROCESS.

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Pursuant to Federal Rule of Civil Procedure 12(b)(2) and 12(b)5, Defendant Ye f/k/a Kanye Omari West ("Ye"), moves to dismiss Plaintiffs' causes of action against him for lack of personal jurisdiction and insufficient service of process.

Ye lacks the requisite minimum contacts with Tennessee necessary for this Court to exercise general or specific personal jurisdiction. He is a California resident and has no history of sustained contacts with Tennessee. Plaintiffs' alleged harm arises entirely from online conduct—there are no allegations of harm stemming from Ye's presence in Tennessee. Plaintiffs only refer to a planned listening party that was cancelled and emails with Plaintiffs' lawyers.

Plaintiffs also failed to effectuate service of process on Ye. In a vague declaration, Plaintiffs' process server admits to visiting what he believed to be Ye's home only a limited number of times before they "sub-served" a security guard there and left a copy of the documents in the mailbox. This fails to comply with either the federal service of process requirements or California substitute service requirements because the security guard was not a member of Ye's household, nor was there anything to suggest he was authorized to accept service. Further, the California substitute service rules require strict compliance and leaving the process documents in a mailbox does not constitute the type of first-class prepaid mailing that is required.

Accordingly, the exercise of jurisdiction over Ye in Tennessee would violate due process and the claims against him should be dismissed.

## II. YE IS NOT SUBJECT TO GENERAL JURISDICTION IN TENNESSEE

A court may assert general jurisdiction over a defendant only when their contacts with the forum state are so continuous and systematic that they are essentially "at home" in the forum. *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014). The "paradigm" forums for general jurisdiction are the defendant's place of incorporation

and principal place of business. *Id.* "For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile[.]" *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011).

Here, Ye is not "at home" in Tennessee. As Plaintiffs admit, he "is a resident of the State of California residing in Los Angeles County." ECF 55 ("FAC"), ¶ 21.

## III. YE IS NOT SUBJECT TO SPECIFIC JURISDICTION IN TENNESSEE

For specific jurisdiction to exist, Plaintiffs must show that:

1. The defendant purposefully availed themself of the privilege of acting in Tennessee;
2. The claims arise from the defendant's activities in Tennessee; and
3. The exercise of jurisdiction would be reasonable.

*S. Mach. Co. v. Mohasco Indus., Inc.*, 401 F.2d 374, 381 (6th Cir. 1968). Plaintiffs fail all three prongs of this test.

### A. Ye Has Not Purposefully Availed Himself of Tennessee

Purposeful availment is the *sine qua non* of specific jurisdiction. *Air Prods. & Controls, Inc. v. Safetech Int'l, Inc.*, 503 F.3d 544, 550-51 (6th Cir. 2007). A defendant must deliberately create a substantial connection with the forum state rather than have random, fortuitous, or attenuated contacts. *Bridgeport Music, Inc. v. Still N The Water Publ'g*, 327 F.3d 472, 478 (6th Cir. 2003).

Plaintiffs allege that Defendants planned a music listening party in Tennessee to promote the album containing the allegedly infringing song. FAC ¶¶ 10, 12. They claim, on information and belief, that Defendants sold tickets to that event. FAC, ¶ 13. The complaint also states that Defendants' representatives (including counsel) sent multiple communications to Plaintiffs' Tennessee-based counsel to negotiate a sample clearance for Plaintiffs' music. FAC ¶¶ 14, 32.

Plaintiffs' allegations fail to show the kind of "substantial connection" necessary to establish purposeful availment. *Burger King Corp. v. Rudzewicz*, 471

2
YE F/K/A KANYE OMARI WEST'S RULE 12(B) MOTION TO DISMISS AND QUASH SERVICE

U.S. 462, 475 (1985).  The nationwide release and streaming of "Fuk Sumn" is, by definition, a non-forum-specific distribution that "is insufficient conduct upon which to predicate purposeful availment."  *Bridgeport Music, Inc. v. Still N The Water Pub.*, 327 F.3d 472, 480 (6th Cir. 2003) (holding that a music publisher does not purposefully avail itself of a forum simply because its work may be exploited there by third parties).

At most, the complaint shows incidental contacts rather than a deliberate strategy by Ye to exploit or benefit from the Tennessee market.  The one-off listening party, as a part of a national tour, would have been an isolated promotional event and not a sustained course of business in Tennessee.  The article cited in the complaint states that the proposed Nashville listening party was only one of many additional shows being added to the tour, including Pittsburgh, Washington, D.C., Charlotte, and Tampa.  FAC, ¶ 12, fn. 1.  The article also contradicts the allegation of ticket sales: "Although inventory isn't available on Ticketmaster until Tuesday, April 2[.]"  *Id.*  Indeed, the listening party was cancelled before tickets ever went on sale.[1]

The allegations regarding communications to Plaintiffs' counsel are insufficient to establish purposeful availment because "the mere fact that his conduct affected plaintiffs with connections to the forum State does not suffice to authorize jurisdiction."  *Walden v. Fiore*, 571 U.S. 277, 291 (2014).  "To find jurisdiction in such scenarios ... would be to mistake a *plaintiff's* forum connections for a *defendant's* forum connections."  *Parker v. Winwood*, 938 F.3d 833, 840 (6th Cir. 2019) (emphasis in original) (holding that an out-of-state musician's alleged willful copyright infringement did not amount to purposeful availment of Tennessee merely because the Tennessee plaintiffs felt the harm and, without forum-directed actions by the defendant, the defendant had not invoked the benefits of doing business in the state).

---

[1] https://variety.com/2024/music/news/kanye-west-ty-dolla-sign-cancel-listening-sessions-vultures-arenas-1235957023/.

There is no allegation, or evidence, that Ye personally traveled to Tennessee for business, owns property or assets there, or has ongoing obligations in Tennessee. Therefore, he has not purposefully availed himself of this forum.

### B. Plaintiffs' Claims Do Not Arise from Ye's Conduct in Tennessee

The source of Plaintiffs' alleged harm does not arise out of any contacts with Tennessee. Even if a defendant has some contact with a forum, specific jurisdiction requires that the claim arise out of that contact. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985).

The gravamen of Plaintiffs' claims are the allegedly unauthorized copying and distribution of their work in the track "Fuk Sumn." FAC, ¶¶ 60-69. Plaintiffs allege this was released on or about Feb. 9, 2024 via global streaming platforms. *Id.*, ¶¶ 3, 44, 64. Plaintiffs further allege Defendants accessed Plaintiffs' song through those digital music service providers and thereafter distributed their own recording, allegedly interpolating a sample of Plaintiffs' song, "via all digital streaming services commercially available." *Id.*, ¶¶ 43-44.

Here, there is not a single allegation showing that any alleged harm resulted from a contact with Tennessee. The only connections to Tennessee that Plaintiffs allege are ancillary marketing and negotiation efforts. While those events may show the song reached Tennessee, and that Defendants may have interacted with Tennessee residents, they are not the *source* of Plaintiffs' alleged injury—which is alleged to have occurred entirely online. *Id.*, ¶¶ 42-44. Even if this did occur, it was likely from California. *See* FAC, ¶¶ 21-27. Based on the FAC, the infringement claim would still exist even if no Tennessee listening party had been held and no Tennessee communications had occurred.

The operative facts of Plaintiffs' claims do not depend on Tennessee. Therefore, those claims do not "arise from" any intrastate activities.

/ / /

/ / /

### C. Exercising Jurisdiction Over Ye Would Be Unreasonable

In addition to minimum contacts, due process requires that jurisdiction be reasonable, *i.e.*, that asserting jurisdiction "does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. State of Wash., Off. of Unemployment Comp. & Placement*, 326 U.S. 310, 316 (1945). If jurisdiction would be so difficult and inconvenient for the defendant that it places him at a severe disadvantage, or if the forum's interest is minimal, a court may deem jurisdiction unreasonable even when minimum contacts exist. *Asahi Metal Indus. Co. v. Superior Ct. of California, Solano Cnty.*, 480 U.S. 102, 114-116 (1987). This determination requires weighing several factors, including: (1) the burden on the defendant of litigating in the forum state; (2) the forum state's interest in adjudicating the dispute; (3) the plaintiff's interest in obtaining relief; (4) the interstate judicial system's interest in efficient resolution of controversies; and, (5) the shared interests of the several states in furthering substantive social policies. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292-93 (1980); *Bulso v. O'Shea*, 730 F. App'x 347, 351 (6th Cir. 2018).

Requiring Ye to defend a complex federal lawsuit across the country in Tennessee would impose a significant burden on him relative to a more appropriate forum. Ye is a California resident with no alleged ongoing ties to Tennessee. FAC, ¶ 21. Although he is a famous artist with resources, the burden of distance and inconvenience is still a factor because Tennessee is not a place he would reasonably expect to be sued given his lack of substantial ties there. The key events and evidence—*e.g.*, music production, business records, witnesses—are likely in California where the music companies are based. Indeed, as alleged by Plaintiffs, all defendants are based in California. FAC, ¶¶ 21, 22, 24, 27. Even if some of them settle with Plaintiffs, they would still be witnesses. Thus, by contrast, litigating in California would greatly reduce the burden on Ye and the other out-of-state co-defendants and witnesses.

/ / /

Tennessee's interest in adjudicating this dispute is minimal. Plaintiffs allege an out-of-state act causing nationwide harm. The dispute is a federal copyright matter involving parties from multiple states and is not premised on Tennessee law or any actions by defendants while in Tennessee. The allegedly infringing music was distributed nationally, not uniquely in Tennessee, and the Plaintiffs could sue in an alternate forum.

Plaintiffs presumably chose Tennessee for their own convenience. However, Plaintiffs' convenience alone cannot create jurisdiction where due process is not otherwise met. Indeed, "[t]he primary concern in assessing personal jurisdiction is the burden on the defendant." *Bristol-Myers Squibb Co. v. Superior Ct. of California, San Francisco Cnty.*, 582 U.S. 255, 256 (2017). The Plaintiffs' interest in convenient and effective relief can still be satisfied in another forum, such as California.

The interstate judicial system's interests in efficiency also do not favor Tennessee. As discussed, all Defendants—and presumably the relevant documents and witnesses—are all located outside of Tennessee, principally in California. FAC, ¶¶ 21-25. Litigating in Tennessee might actually increase complexity if it necessitates out-of-state discovery. It has already caused complexity given that other co-defendants have contested jurisdiction. It would be more efficient to litigate in a forum where all defendants are subject to jurisdiction without controversy.

Moreover, exercising jurisdiction in Tennessee on these thin contacts could set a precedent of nationwide entertainers being sued wherever a plaintiff resides. This offends the basic fairness principle that one should reasonably anticipate being haled into court in a particular state. *World-Wide Volkswagen Corp., supra,* 444 U.S. at 297. Ye could not reasonably anticipate that promoting a song generally or having his representatives send an email to a Tennessee lawyer would expose him to litigation in Tennessee for a dispute that is fundamentally about alleged conduct in California.

## IV. PLAINTIFFS FAILED TO EFFECTUATE VALID SERVICE OF PROCESS ON YE

In federal court, an individual may be served by either "delivering a copy of the summons and of the complaint to the individual personally," "leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there," or "delivering a copy of each to an agent authorized by appointment or by law to receive service of process." Fed. R. Civ. P. 4(e)(2).

They may also be served by "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made[.]" Fed. R. Civ. P. 4(e)(1). The alleged service was performed in California which allows substitute service only if personal service was first attempted with reasonable diligence. Cal. Civ. Proc. Code § 415.20(b). Then, copies of the summons and complaint may be left "at the person's dwelling house, usual place of abode, usual place of business, or usual mailing address other than a United States Postal Service post office box[.]" *Id.* This must be done "in the presence of a competent member of the household or a person apparently in charge of his or her office, place of business, or usual mailing address other than a United States Postal Service post office box" who is "at least 18 years of age[.]" *Id.* This person "shall be informed of the contents thereof[.]" *Id.* This method of service is completed "by thereafter mailing a copy of the summons and of the complaint by first-class mail, postage prepaid to the person to be served at the place where a copy of the summons and complaint were left." *Id.* "Service of a summons in this manner is deemed complete on the 10th day after the mailing." *Id.*

Here, Plaintiffs have filed a proof of service that asserts the process server "left the summons at the individual's residence or usual place of abode with Officer Roman the security officer on duty, a person of suitable age and discretion who resides there, on 08/06/2025, and mailed a copy to the individual's last known

7

address[.]" ECF 114.  The accompanying declaration also claims that the process server "sub-served security officer, Mr. Roman[.]" ECF 114-1.  Regardless of whether Plaintiffs intend to assert federal or state service rules, they failed to effectuate service under either methodology.

      Service on the security guard was improper because he is not someone "who resides there" or "a competent member of the household" and nothing in the declaration indicates otherwise.  Fed. R. Civ. P. 4(e)(2); Cal. Civ. Proc. Code § 415.20(b); *see Zirbes v. Stratton*, 187 Cal. App. 3d 1407, 1416 (Cal. Ct. App. 1986) (California rule is coextensive with meaning under Federal rule).  There is also no indication that the security guard was "authorized by appointment or by law to receive service of process." Fed. R. Civ. P. 4(e)(2).  In these circumstances, courts have held that service of process was insufficient.  *See Kolker v. Hurwitz*, 269 F.R.D. 119, 124 (D.P.R. 2010) (no service of process where "there is no evidence or argumentation supporting a finding that the security guard had any authority to accept and sign for deliveries to the Hurwitz's residence or that the security guard at the Hurwitz's residence had a duty to inform Defendants of any correspondence received."); *Polo Fashions Inc. v. B. Bowman & Co.*, 102 F.R.D. 905 (S.D.N.Y. 1984) (abode service on a non-live-in housekeeper was insufficient because the recipient did not "reside" there).  "It appears the common theme in the cases is not only whether the defendant is reasonably likely to receive the papers served, but whether the person to whom they are handed is a full-time resident of the defendant's dwelling house or usual place of abode." *Franklin Am., Inc. v. Franklin Cast Prods., Inc.*, 94 F.R.D. 645, 647 (E.D. Mich. 1982).  Indeed, not only was the security guard not a member of the household, but, as stated in the process server's declaration, he was not even the only guard on duty that week.  ECF 114-1.

      To the extent they may argue California substitute service applies, Plaintiffs failed to satisfy the additional requirements.  Notably, Plaintiffs failed to mail "a copy of the summons and of the complaint by first-class mail, postage prepaid to the

person to be served at the place where a copy of the summons and complaint were left." Cal. Civ. Proc. Code § 415.20(b).  The process server's declaration admits "the documents were placed in a sealed enveloped in the mailbox." ECF 114-1.  There is otherwise nothing in the declaration that states the process server mailed the summons and complaint.  *Id.*  There is also nothing in the declaration to suggest the process server properly informed the security guard of the contents of the documents. *Id.*  The limited number of attempts also shows Plaintiffs failed to meet the reasonable diligence requirement that is a prerequisite to substitute service in the first place.  The declaration does not even state what time the attempts were made at.  *Id.*  Plaintiffs attempted service fails because "there must be strict compliance with the requisite statutory procedures." *Zirbes v. Stratton*, 187 Cal. App. 3d 1407, 1417 (Cal. Ct. App. 1986).  Indeed, "no California appellate court has gone so far as to uphold a service of process solely on the ground the defendant received actual notice when there has been a complete failure to comply with the statutory requirements for service." *Summers v. McClanahan*, 140 Cal. App. 4th 403, 414 (2006).

## V.    CONCLUSION

For the foregoing reasons, Ye respectfully requests that the Court dismiss the claims against him for lack of personal jurisdiction and inadequate service of process.

Dated:  September 8, 2025                              **MARTORELL LAW APC**


                                                       By:   */s/ Eduardo Martorell*
                                                             Eduardo Martorell (California SBN 240027)
                                                             Admitted *pro hac vice*
                                                             Evan Miller (California SBN 336473)
                                                             (*Pro Hac Vice Application to be Filed*)

                                                             Martorell Law APC

        6100 Center Drive, Suite 1130
        Los Angeles, CA 90045
        Phone: (323) 840-1200;
        Fax: (323) 840-1300

*Specially Appearing Attorneys for*
*Ye f/k/a Kanye Omari West*